**STATE of Iowa, Appellee,**

v.

**Thomas Joseph O'CONNELL, Appellant.**

**No. 61172.**

Supreme Court of Iowa.

Feb. 21, 1979.

Kjas T. Long, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., David H. Correll, Black Hawk County Atty., and R. James Sheerer, Harry W. Zanville and Jay A. Nardini, Asst. Black Hawk County Attys., for appellee.

**REYNOLDSON, Chief Justice.**

Defendant Thomas Joseph O'Connell appeals from judgments imposing concurrent life sentences for the second-degree murder of his wife Carole and first-degree murder of his daughter Colleen. We affirm.

The bodies of Carole and Colleen were discovered in their burning mobile home on the morning of March 29, 1977. Defendant had left for work about two hours before the fire was discovered. The jury could have found the burn time of the mobile home was at least two hours. An autopsy indicated Carole had been killed by strangulation before the fire was set and that eight-month-old Colleen died of smoke inhalation.

Defendant was charged with murder by separate county attorney's informations. The two charges were consolidated for trial.

Assisted by different counsel defendant appeals, raising seven issues for review

which we state and treat in the following divisions.

## I. *Was defendant denied his right to speedy trial?*

Defendant contends his statutory and constitutional rights to speedy trial were violated.

The informations in this case were filed April 8, 1977. On the same day counsel was appointed for defendant, who pled not guilty to each charge. Trial was scheduled for May 17.

On the May 9 deadline set by the arraigning judge for filing additional minutes of testimony, State filed and served on defendant minutes for twenty additional witnesses. Defense counsel successfully moved for continuance to enable him to investigate and interview these witnesses. Trial was rescheduled for June 20, seventy-three days after the informations were filed.

State filed and served additional minutes of testimony on June 2, 14, and 16 without objection. Defendant filed five separate motions on June 14 which were ruled on by the court. State timely complied with these rulings and trial commenced as rescheduled.

The following from § 795.2, The Code, 1975, is pertinent:

> If a defendant indicted for a public offense, whose trial has not been postponed upon *his* application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown.

(Emphasis supplied.) See present rule 27(2)(b), Rules of Criminal Procedure (ninety days).

The issue of speedy trial was not raised until sentencing. Defendant then personally stated:

> Under habeas corpus, I was not honored a sixty-day trial in accordance with 2795.2 [sic] of the Iowa Code. I would further like to state that I gave no written or verbal consent to delay. I did not sign power of attorney.

We have held the § 795.2 speedy trial right is waived if a defendant who is represented by counsel delays until adverse verdict to move for dismissal. *State v. Paulsen,* 265 N.W.2d 581, 585 (Iowa 1978). But defendant raises an issue of first impression in this jurisdiction: that the statutory right is fundamental and personal to him and can be waived only by him, on the record and only after being fully advised of the nature of the right. He asserts no authority other than the § 795.2 phrase "his application." State argues § 795.2 was waived by defense attorney's continuance motion.

We have enforced the § 795.2 provision which denies statutory speedy trial rights to a defendant "whose trial has * * * been postponed upon his application." See *State v. Manning,* 224 N.W.2d 232, 235–36 (Iowa 1974); *State v. Shockey,* 214 N.W.2d 146, 150–51 (Iowa 1974). This rule applies here if defendant is bound by his lawyer's continuance motion.

■ Ordinarily a criminal defendant is bound by his or her counsel's actions taken on the client's behalf. *Faretta v. California,* 422 U.S. 806, 820, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 573 (1975); *State v. Benson,* 247 Iowa 406, 410, 72 N.W.2d 438, 441 (1955); *Shores Co. v. Iowa Chem. Co.,* 222 Iowa 347, 350–51, 268 N.W. 581, 582–83 (1936). See also § 610.16(1) (attorney has authority to execute in client's name any instrument necessary in the prosecution or defense of an action). The word "his" in § 795.2 must be read in conjunction with § 610.16(1) and supportive case law.

■ Interpreting § 795.2 in this light, we conclude the legislature intended speedy trial rights would be waived by continuance motions made by the *defense,* not merely those made by defendant.

This holding is consistent with the rationale used and result reached by other courts confronting this question. *Townsend v. Superior Court,* 15 Cal.3d 774, 543 P.2d 619, 126 Cal.Rptr. 251 (1975); *People v. Carr,* 9 Ill.App.3d 382, 292 N.E.2d 492 (1972); *State v. McBreen,* 54 Ohio St.2d 315, 376 N.E.2d 593 (1978); *State v. Franulovich,* 18 Wash.

App. 290, 567 P.2d 264 (1977). It is also consistent with our observation in *State v. Brandt,* 253 N.W.2d 253, 255–56 (Iowa 1977), that the acts or omissions of defendant *or* counsel can constitute good cause for delay beyond sixty days. If counsel can act for defendant in ways that can attribute delay to defendant, counsel should be able to waive the statute altogether.

■ Although defendant refers to a constitutional right to speedy trial in arguing his main premise, no constitution or constitutional provision is cited. The issue is deemed waived. Rule 14(a)(3), R.App.P.; *Miller v. International Harvester Co.,* 246 N.W.2d 298, 304 (Iowa 1976); *State v. Vick,* 205 N.W.2d 727, 729 (Iowa 1973). We observe in passing that under the balancing test delineated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we detect no constitutional violation in these circumstances.

## II. *Was testimony improperly admitted relating to defendant's prior assaults on his wife?*

One of defendant's pretrial motions was a motion in limine. It was directed against potential testimony from thirteen prosecution witnesses regarding defendant's prior assaults on Carole, her fear of defendant, and the general state of their relationship before and after marriage. Defendant sought "to prohibit disclosure of questionable evidence until the Court during trial in the jury's absence has been presented an offer and objection." Defendant asserted the described evidence

is too remote in time to be material for any issue in this case, is an attempt to prove the current charge by proof of prior criminal acts and is an attempt to establish past conduct and character on the part of the defendant.

State resisted. Trial court sustained the motion as it related to four witnesses who would have testified to events prior to the February 29, 1976, marriage of defendant and Carole. The motion was overruled as to nine witnesses. Six of these persons testified. From this evidence the jury could have found the following facts.

One year before Carole's death defendant struck her "real hard in the back of the head and * * * two or three times in the face," chipping a tooth and causing a swollen lip. The assault occurred because Carole refused to have sexual intercourse with defendant.

In August, 1977, only ten days before Colleen was born, defendant "hit" and "beat" Carole on her face and torso, causing bruises and swelling. Clothed only in bikini panties, Carole ran from her mobile home and sought refuge with neighbors. Earlier in the day defendant had become angry when he learned he would not be permitted in the delivery room.

In December, 1976, Carole again fled her mobile home after defendant struck her several times in the face during an argument.

The jury could have found that during these incidents Carole feared for her life and the child's safety, believed defendant wanted to hurt her and Colleen, and believed defendant became very violent when angry.

This evidence was introduced with but two objections, both made when the first witness began to testify about the prior assaults. These objections merely referred to the motion in limine and mentioned only the first witness. Trial court overruled the "general objection" and reserved rulings on "specific matters that relate to specific objections."

While much of the above testimony was hearsay, the motion in limine did not raise that ground. Defendant made a hearsay objection only when officer Gary McCormack was relating circumstances surrounding the first assault. This witness testified he and a fellow officer had responded promptly to a call at the O'Connell mobile home. When they arrived Carole was sobbing, her eyes were red, her cheeks were wet, and the left upper portion of her lip was swollen. A tooth had been chipped and she had some particles of tooth in a little handkerchief or kleenex held in her hand.

Over the hearsay objection officer McCormack was permitted to testify Carole "said that her husband had hit her real hard in the back of the head and that he had struck her two or three times in the face and that he knew quite a bit about karate."

After the officers had been at the mobile home about ten minutes her "sobbing and intense crying had quieted down quite a bit." They then took her to the police department where her injuries were photographed and her statement was taken. She then expressed fear of her husband and said, "[H]er husband had come home and wanted to have sexual intercourse, and she refused him, and he got mad."

On appeal defendant contends admission of this prior assault evidence over objections made in his limine motion was error. He also asserts trial court erroneously admitted the above-quoted portions of McCormack's testimony because they constituted hearsay.

■ We turn first to the motion in limine. A close study of our decisions discloses our rulings on the preservation issue ordinarily are not controlled by the title of the motion or its prayer. See, e. g., *State v. Jones,* 271 N.W.2d 761, 765–66 (Iowa 1978); *State v. Miller,* 229 N.W.2d 762, 767–68 (Iowa 1975). What is critical is what the ruling by trial court does or purports to do. A ruling only granting or denying protection from prejudicial references to challenged evidence cannot preserve the inadmissibility issue for appellate review. But if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial. *Id.*

■ Here defendant's motion was titled and clearly intended to be treated only as a motion in limine. However, trial court directed the filing of briefs and held a hearing on the record. The anticipated evidence was adequately described, the law was discussed, and trial court ruled on admissibility of each witness' testimony. Under these circumstances it was unnecessary to raise again during trial the objections set out in the motion.

Because the error, if any, was preserved we must address the merits of defendant's limine objection. He essentially contends trial court erred in admitting evidence of defendant's prior criminal acts.

■ As a general rule, evidence of other criminal acts committed by an accused is inadmissible. See *State v. Johnson,* 224 N.W.2d 617, 619 (Iowa 1974):

We also recognized exceptions permitting evidence of reasonably similar other crimes when it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the [perpetrator] * * *.

In this trial the crucial factual issue was the identity of the person who strangled Carole. Defendant's prior assaults on her are relevant. They also tend to prove intent. Nor was the evidence so unduly prejudicial that trial court abused its discretion in admitting this relevant evidence.

The evidence of quarreling, defendant's hostility, and Carole's fears was also relevant. To prove murder the State had to prove malice aforethought. Because this element constitutes a state of mind, a prosecutor in a murder case may show prior relations between the accused and the alleged victim, as bearing on accused's *quo animo. State v. Kellogg,* 263 N.W.2d 539, 542 (Iowa 1978); *State v. Peterson,* 219 N.W.2d 665, 672 (Iowa 1974).

■ Turning to the second prong of the claimed error, we find the statements made by Carole to officer McCormack could be admitted under the res gestae (excited utterance) exception. See *State v. Haines,* 259 N.W.2d 806, 810 (Iowa 1977), and citations. The time lapse prior to the second quoted statement was not so great, under a rational view of the evidence, to warrant a holding that trial court abused its discretion in admitting it. See *State v. Stafford,* 237 Iowa 780, 787, 23 N.W.2d 832, 836 (1946) (required spontaneity held to have prevailed fourteen hours after the event).

III. *Was defendant's karate uniform and testimony relating to it improperly admitted?*

Defendant asserts his karate (Tae Kwon Do) uniform was erroneously admitted into evidence.

The exhibit, a "green belt" uniform, was found in the mobile home. Defendant made no objection to the admission of this exhibit.

The State presented testimony the green belt indicated a lower to middle proficiency in the art of empty handed fighting. The art of Tae Kwon Do, a branch of karate originating in Korea, uses both foot and hand movement.

The autopsy conducted on Carole disclosed she suffered abrasions on both the left and right side of her neck. The hyoid bone in her neck was broken. There were bruises on the inside of her mouth, left side of her face, hip and ribs. There were hemorrhages in the right ear area. The doctor testified these injuries were caused by "blunt force," consistent with blows struck by a fist or foot.

When the testimony relating to the significance of the green belt and the art of karate was offered through a qualified police officer who found the uniform in the mobile home, defendant's relevancy objection was overruled.

 The determination of relevancy rests largely within trial court's discretion. *State v. Kaufman,* 265 N.W.2d 610, 619 (Iowa 1978). Although the question here is close, we hold no abuse of discretion is disclosed by this record. Other evidence concerning defendant's karate expertise came in without objection. The testimony of the police officer was coupled with the uniform which came in without objection and the evidence tended to prove defendant possessed the capacity to inflict the injuries disclosed by the autopsy.

IV. *Did trial court erroneously curtail defendant's right of cross-examination?*

Under cross-examination defendant testified he was uncooperative with the police following discovery of the murders because police officer Zarifis made threatening gestures toward him.

Zarifis was called on State's rebuttal and denied these accusations. On cross-examination defendant was not permitted to ask a question which was subsequently offered in chambers: "Officer Zarifis, are you the same David Zarifis that Justice McCormick of the Iowa Supreme Court in the recent decision of State versus Pooler, in describing your conduct as a police officer, observed that it was the most disgraceful account of any police conduct that he had ever heard?" Zarifis, later in chambers, conceded he was the Zarifis mentioned in *State v. Pooler,* 255 N.W.2d 328 (Iowa 1977).

In *Pooler* officer Zarifis was involved in an undercover investigation. His superiors gave him permission to participate in a break-in. In the course of this assignment Zarifis also operated a motor vehicle while under the influence of alcohol "to a degree." 255 N.W.2d at 329. While the department's action was condemned in *Pooler,* we did not use the language attributed to us in the cross-examination question.

 When a witness testifies, he places his credibility in issue. *State v. Connor,* 241 N.W.2d 447, 455 (Iowa 1976). Prior conduct which relates to honesty and veracity is frequently admissible on cross-examination. See *State v. Johnson,* 219 N.W.2d 690, 695 (Iowa 1974).

 However, we hold trial court did not abuse its discretion in sustaining the objection to this question. First, it did not fairly reflect the gist of *Pooler.* Second, the conduct subject to our censure does not reflect on Zarifis' truthfulness or credibility as a witness. See generally, *State v. Crawford,* 202 N.W.2d 99, 103–05 (Iowa 1972).

V. *Was there a sufficient gap in chain of custody of billfold to preclude its admission into evidence?*

 The police found Carole's billfold on the top of the sofa in the mobile home. It contained credit cards and money. The State believed it refuted a robbery theory.

The billfold was offered and received into evidence over defendant's objection that the necessary foundation was lacking. He asserted there had been approximately ten minutes during the afternoon of March 30, 1977, when the mobile home was not secured and other persons had access to it. The record discloses, however, that officer Dawson took the billfold into his possession on the morning of March 30, before the ten-minute gap occurred.

Even assuming a brief interruption in the chain of custody would make evidence inadmissible, we find no merit in this assignment of error. The billfold was properly admitted upon adequate foundation.

## VI. *Did trial court submit an erroneous instruction on circumstantial evidence?*

A fighting issue at trial concerned which of two instructions on circumstantial evidence should be submitted to the jury.

Defendant contended for the Iowa State Bar Association's Uniform Instruction 501.-13, the last two sentences of which provide:

In order, however, to warrant a conviction on circumstantial evidence alone, the facts proved must not only be consistent with the guilt of the accused, but they must also be inconsistent with any rational theory of his innocence, and all the facts and circumstances necessary to prove guilt must be connected with each other and with the main facts sought to be proven, that taken together they lead to a satisfactory conclusion that the crime charged was committed and that the accused committed it. It is not sufficient that they render probable the guilt of the accused, but they must exclude every reasonable hypothesis of his innocence.

State persuaded the court to give an instruction which followed 501.13 except for the portion quoted above, which was replaced with this sentence:

Whether the evidence in this case is direct or circumstantial, or a combination thereof, you are instructed that before you can convict the defendant, you must be satisfied of his guilt beyond a reasonable doubt from all the evidence in this case.

Although the State urges defendant did not preserve the alleged error, the record reveals trial court was apprised of the matter objected to and the grounds of the objection. See rule 196, Rules of Civil Procedure; *State v. Wright,* 274 N.W.2d 307, 311–12 (Iowa 1979). The alleged error was preserved for our review.

The State concedes trial court's instruction falls well short of the standard expressed in 501.13 and a long line of Iowa cases. See, e. g., *State v. McDaniel,* 265 N.W.2d 917, 924 (Iowa 1978); *State v. Overstreet,* 243 N.W.2d 880, 883–84 (Iowa 1976); *State v. Hall,* 235 N.W.2d 702, 715 (Iowa 1975), cert. denied, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977); *State v. Ampey,* 210 N.W.2d 433, 434 (Iowa 1973).

Our cases are not, however, in accord with the federal courts and a growing number of state courts. These courts have eliminated distinctions between direct and circumstantial evidence in testing evidential sufficiency. See, e. g, *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166–67 (1954); *United States v. Shepard,* 538 F.2d 107, 110–11 (6th Cir. 1976); *United States v. Heck,* 499 F.2d 778, 790 (9th Cir.), cert. denied, 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974); *United States v. Lawson,* 483 F.2d 535, 536–38 (8th Cir. 1973), cert. denied, 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); *United States v. Maenza,* 475 F.2d 251, 254 (7th Cir. 1973); *United States v. Coombs,* 150 U.S.App.D.C. 333, 334, 464 F.2d 842, 843 (1972); *United States v. Hamilton,* 457 F.2d 95, 100 n.12 (3d Cir. 1972); *United States v. Siragusa,* 450 F.2d 592, 596 (2d Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1195, 31 L.Ed.2d 248 (1972); *United States v. Martine,* 442 F.2d 1022, 1023 (10th Cir. 1971); *O'Neal v. United States,* 411 F.2d 131, 137 (5th Cir.), cert. denied, 396 U.S. 827, 90 S.Ct. 72, 24 L.Ed.2d 77 (1969); *Taglianetti v. United States,* 398 F.2d 558, 568 (1st Cir. 1968), aff'd, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); *United States v. Johnson,* 337 F.2d 181, 204 (4th Cir. 1964), aff'd, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681

(1966); *Jordan v. State,* 481 P.2d 383, 386 (Alaska 1971); *State v. Harvill,* 106 Ariz. 386, 389–91, 476 P.2d 841, 844–46 (1970); *Murray v. State,* 249 Ark. 887, 894–95, 462 S.W.2d 438, 442–43 (1971); *People v. Bennett,* 183 Colo. 125, 130–32, 515 P.2d 466, 469–70 (1973); *Henry v. State,* 298 A.2d 327, 330 (Del.1972); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978); *State v. Bush,* 58 Haw. 340, 569 P.2d 349 (1977); *State v. Wilkins,* 215 Kan. 145, 151–56, 523 P.2d 728, 733–37 (1974); *State v. Cowperthwaite,* 354 A.2d 173, 179 (Me.1976); *Metz v. State,* 9 Md.App. 15, 20–23, 262 A.2d 331, 334–35 (1970); *Bailey v. State,* —— Nev. ——, ——, 579 P.2d 1247, 1248–49 (1978); *State v. Fiorello,* 36 N.J. 80, 87–90, 174 A.2d 900, 903–05 (1961), cert. denied, 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed. 2d 396 (1962); *State v. Bell,* 90 N.M. 134, 137, 560 P.2d 925, 928 (1977); *State v. Krummacher,* 269 Ore. 125, 137–40, 523 P.2d 1009, 1014–16 (1974); *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *State v. Aurgemma,* 116 R.I. 425, 435 n.6, 358 A.2d 46, 52 (1976); *State v. Gosby,* 85 Wash.2d 758, 761–68, 539 P.2d 680, 682–86 (1975); *Blakely v. State,* 542 P.2d 857, 861–63 (Wyo.1975).

Although we have recently reaffirmed the cautionary provisions in the circumstantial evidence instruction, *State v. Kaufman,* 265 N.W.2d at 615, the rationale of these cases was not advanced there. Nor did we have before us the instruction given here.

We now conclude the cautionary language of uniform instruction 501.13 is no longer a requirement in this jurisdiction. This court has routinely observed that circumstantial evidence often may be equal or superior to direct evidence. E. g., *State v. Streit,* 205 N.W.2d 742, 743 (Iowa 1973). Accord, *Holland v. United States:*

> Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence.

348 U.S. at 140, 75 S.Ct. at 137–38, 99 L.Ed. at 166–67; *United States v. Becker:*

All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it.

62 F.2d 1007, 1010 (2d Cir. 1933) (L. Hand, J.); 1 Wharton's Criminal Evidence § 6 (13 ed. 1972); 1 Wigmore on Evidence § 26 (3d ed. 1940); Note, Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine, 55 Tex.L.Rev. 1255, 1255–56 & n.6 (1977).

 Instructions should permit a juror to view the merits of the particular circumstantial evidence presented without the restriction based on an outmoded generality. For purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. Trial court did not err in deleting from uniform instruction 501.13 language which might convey a contrary impression to the jury. We approve the instruction given by trial court in this case.

## VII. *Was defendant supplied with constitutionally adequate counsel?*

 Defendant asserts his trial counsel's performance was constitutionally inadequate. He alleges counsel (1) waived defendant's speedy trial right without permission, (2) indicated in opening statement defendant would testify on his own defense without consulting defendant, (3) failed to object to late filing of State's additional minutes of testimony, (4) failed to investigate or secure various exculpatory evidence available, (5) failed to depose all but two witnesses, (6) failed to interview witnesses as requested by defendant, (7) failed to competently cross-examine a witness, (8) failed to attempt in an effective manner to obtain reduction of defendant's bond.

State contends most of defendant's allegations are without adequate substantiation

in the record. It argues only one set of minutes of testimony were filed late and defense counsel had received prior notice that those two witnesses would testify at trial. State further points out that deposing only two adverse witnesses does not evidence ineffective counsel when there are other less expensive means of preparing for trial.

Finally, the State reasons presentation of these issues on direct appeal would deny State and defendant's counsel opportunity to rebut the allegations of ineffectiveness. It therefore urges the issue should be reserved for determination in proceedings for postconviction relief. We agree. See *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978); *State v. Kellogg,* 263 N.W.2d at 543–44.

We find no basis on the record before us to hold defendant's trial counsel did not perform within the range of normal competence. *Cleesen v. State,* 258 N.W.2d 330, 332 (Iowa 1977). We determine we should affirm the judgment but without adjudicating the issue of trial counsel's competency. Defendant's right to raise that issue by postconviction proceedings, ch. 663A, The Code, is reserved. See *Kellogg,* 263 N.W.2d at 544.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially joined by LeGRAND and HARRIS, JJ.

McCORMICK, Justice (concurring specially).

I concur in the result and in all but division VI of the court's opinion. I am unable to agree with the basis of division VI because I do not believe defendant alerted the trial court to the ground of his objection to the circumstantial evidence instruction.

Under rule 196, R.C.P., an objection to the court's final draft of instructions or its failure to give requested instructions must specify "the matter objected to and on what grounds." In the present case, defendant "objected" by requesting that the uniform instruction on circumstantial evidence be given instead of the court's instruction. I agree that this alerted the trial court to the matter objected to, but I do not believe it advised the court of the ground of the objection.

In an analogous situation in *Crist v. Iowa State Highway Commission,* 255 Iowa 615, 123 N.W.2d 424 (1963), this court held the objection presented nothing for review.

I would reject defendant's assignment of error in division VI on this basis.

LeGRAND and HARRIS, JJ., join in this special concurrence.