NOTICE
Decision filed 06/15/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240940-U

NO. 5-24-0940

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 21-CF-251 |
| | ) | |
| SHAWN M. KUBINA, | ) | Honorable |
| | ) | Allan F. Lolie, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's convictions are affirmed where he did not establish a reasonable probability that the outcome of the proceedings would have been different had trial counsel filed a speedy trial demand and a subsequent motion to dismiss based on a speedy trial violation.

¶ 2     Defendant, Shawn M. Kubina, appeals his conviction, arguing that counsel was ineffective for failing to file a written speedy trial demand and then a motion to dismiss the subsequent charges that were subject to compulsory joinder to the original charges filed 18 months prior. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4     On August 18, 2021, defendant was charged, through information, with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(a)(7) (West 2020)), a Class 2 felony, for knowingly

1

penetrating K.K.'s anus, on March 16, 2021, for the purpose of sexual arousal. Defendant was also charged with battery (*id.* § 12-3(a)(1)), a Class A misdemeanor, for choking K.K., on March 16, 2021, almost to the point of passing out. A bill of indictment was returned by the grand jury on September 30, 2021.

¶ 5    On September 22, 2021, the court indicated it would give defendant a new hearing date due to technical difficulties. At the November 10, 2021, hearing, the court noted that a bill of indictment had been returned by a grand jury. It admonished defendant of his charges and the potential penalties. Defendant stated he understood the charges, wished to hire an attorney, and estimated it would take one or two months to complete the hiring process. At the next hearing, on January 12, 2022, defendant requested additional time to obtain counsel because he was waiting on his tax refund.

¶ 6    On February 23, 2022, defendant informed the court that he did not have the funds to obtain counsel and requested a public defender. The court appointed public defender William Starnes to represent defendant. Public defender Starnes waived further reading of the charges, entered a plea of not guilty, and demanded trial by jury. On February 25, 2022, the court filed a pretrial order imposing pretrial release conditions.

¶ 7    On April 6, 2022, public defender Starnes asked for another pretrial setting on June 8, 2022. The court granted his request with no objection from the State. A docket entry shows a hearing occurred on June 8, 2022, but the record contained no report of proceedings for that date.

¶ 8    At the August 10, 2022, pretrial hearing, the court vacated public defender Starnes's appointment and appointed public defender Brenda Mathis to represent defendant. On October 12, 2022, public defender Mathis requested a pretrial setting because there were a few things she needed to review and possibly request more information from the State. She averred that she and

defendant went over the discovery, but she anticipated more conversations would be necessary. She further contended that a private investigator was needed and requested appointment of one. The State indicated it had no objection. The court ordered public defender Mathis to prepare a motion and order. The court set the next pretrial hearing for November 30, 2022.

¶ 9    At the November 30, 2022, hearing, public defender Mathis indicated a private investigator had been obtained and was working on defendant's case. She requested a pretrial setting on January 23, 2023. She contended that given this was a sex crime, there were likely several individuals that the private investigator would have to interview. The State noted no objection. The court granted counsel's request for a January 23, 2023, pretrial hearing. A docket entry, dated January 20, 2023, stated that public defender Mathis withdrew from the case.

¶ 10    On January 23, 2023, the court noted that defendant was present with counsel, public defender Lucas Mette. Public defender Mette stated that he met with defendant but needed time to discuss the case with him and requested a pretrial setting only. The State had no objection. The court asked the State if it had any objection to whether the hearing was in person or Zoom. The State indicated it had no objection. The court then stated this hearing may be the last Zoom setting that it would do and asked defendant if he was requesting the next hearing be a Zoom setting. Defendant stated, yes, and advised that he lived out of state. The court said that it understood and that it would set the next hearing as a Zoom status date on March 13, 2023. It noted, however, that it did not see anything in the court record giving defendant specific permission to live outside of the state. The court also noted it was not aware if defendant requested to live out of state but that would be the status quo in this case. A discussion was then held off record. When the court went back on the record, it noted that no arrest card was completed and ordered public defender Mette to report to the jail within seven days to confirm whether an arrest card was completed. The court

further noted that if it had not been done, defendant would have to report to the jail within seven days to complete an arrest card.

¶ 11   On March 6, 2023, the State filed two counts of criminal sexual assault, Class 1 felonies. The first count of criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2020)) alleged that between March 16, 2021, and March 18, 2021, defendant placed his penis in K.K.'s anus while she was sleeping and unable to give knowing consent. The second count of criminal sexual assault (*id.* § 11-1.20(a)(1)) alleged that between March 16, 2021, and March 18, 2021, defendant placed his penis in K.K.'s anus, while she was sleeping, by the use of force or threat of force.

¶ 12   On March 9, 2023, K.K. filed a notice of victim's assertion of rights pursuant to section 4.5(c-5)(1) of the Rights of Crime Victims and Witnesses Act (725 ILCS 120/4.5(c-5)(1) (West 2020)) and the Illinois Constitution (Ill. Const. 1970, art. 1, § 8.1(a)). The rights asserted by K.K. included "[t]he right to timely disposition of the case following the arrest of the accused."

¶ 13   At the outset of the March 13, 2023, hearing, the State informed the court that defendant had been living out of state, but it did not know if defendant was given permission to do so. It further noted that it filed two additional counts. The court stated it would give defendant another court date, but due to the age of the case, it was going to have an in-person hearing on May 2, 2023. The court admonished defendant of the nature and the potential penalties for the new charges. Defendant indicated he understood the charges and penalties.

¶ 14   On May 2, 2023, public defender Mette stated that he had met with defendant a couple of times but also missed a couple of appointments due to public defender Mette's court schedule. He stated he was scheduled to meet with defendant that day, but it was unclear whether that would be possible. He further noted that the defense was awaiting discovery from its investigator, as he had only received bills from the investigator at that point. Public defender Mette also noted that

4

defendant had an appointment within the next week to explore hiring private counsel. As such, he requested a further pretrial setting in July. Upon questioning by the court, public defender Mette clarified that defendant was entering a plea of not guilty to the new counts. The court noted that defendant pled not guilty to the new counts and requested a jury trial. The State noted that it would not object to one more pretrial setting but would argue for a trial sooner rather than later given the victim's assertion of her rights. The court told the defense that it would grant one last pretrial setting to be set in late June. It noted that a private investigator had been involved for quite some time and that it was not the court's intent to hold the case based on the private investigator without more details and a specific motion.

¶ 15    On June 28, 2023, public defender Mette noted that it appeared defendant was not going to hire private counsel. He further noted that defendant had been diligently setting appointments with him since January, but public defender Mette missed four of them. Public defender Mette further stated that he met with defendant at least one or two times, but they needed more time as there were hours and hours of video to review. He therefore requested another pretrial setting. The court indicated it was going to set the case on the jury docket. Public defender Mette then requested the court set it as far out as the court was willing. The court set the jury trial for October 16, 2023.

¶ 16    On September 12, 2023, public defender Mette noted that he owed the State some discovery. The State indicated the victim was having surgery so it would like to continue the trial date. Public defender Mette stated that he had no objection to the continuance and that his request would be a January trial date. The court noted that the jury trial setting was vacated on the State's motion without objection and that the time was charged to defendant. It then set the trial for January 16, 2024.

¶ 17    On January 10, 2024, a grand jury returned an indictment for counts III and IV. Defendant's trial began January 16, 2024. Prior to jury selection, the State noted that it offered a plea deal to defendant of him entering an open plea to only the aggravated criminal sexual abuse charge. Defendant confirmed his rejection of the plea. The State then announced it would dismiss the aggravated criminal sexual abuse and battery charges and proceed to trial on both counts of criminal sexual assault. The court arraigned defendant on the new charges, informing him of the nature of the charges and potential penalties. The parties then selected the jury.

¶ 18    The State presented evidence from several witnesses, including the victim, K.K., defendant's text messages to K.K., and defendant's statements to police. Its evidence showed that K.K. and defendant were married in 2011, had twin girls in 2013, and then divorced in 2017. However, in March 2021, defendant sometimes stayed at K.K.'s home because he had nowhere to go. On March 16, 2021, K.K. and defendant were running errands. He kept pestering her to have sex. Although he knew she did not want to have sex, K.K. told defendant she did not care, just do it, and "get it over with." They had sex. K.K. described it as "not nice," specifying defendant was forceful and choked her. In the next few days, defendant brought up sex a lot and "was very, very sexually fixated at that point." On March 18, 2021, K.K. woke up, lying on her stomach, with defendant on top of her, "shoving" his penis in her anus. She tried to put her hand back to stop defendant, but she was in a bad position to do so. Defendant kind of stopped K.K.'s hand from pushing him away. At no time did K.K. consent. When defendant finished, he got up and left. Thereafter, defendant texted K.K., among other things, that it was "a horrible idea to try an[d] wake you up to it." Defendant also apologized but stated he did not push her hand away.

¶ 19　After the State presented its evidence, the defense moved for a directed verdict, which the court denied. The defense did not present any evidence. After deliberation, the jury found defendant guilty of both counts.

¶ 20　On January 23, 2024, the defense filed a motion to reconsider the motion for a directed verdict. The State filed a response on February 5, 2024, arguing there was sufficient evidence for a reasonable trier of fact to find defendant guilty.

¶ 21　On March 25, 2024, prior to sentencing defendant, the court denied defendant's motion to reconsider its ruling on the motion for a directed verdict. The matter then proceeded to sentencing, where the court ultimately merged the two criminal sexual assault convictions and sentenced defendant to eight years' imprisonment. On April 8, 2024, defendant filed a motion to reconsider his sentence. On August 12, 2024, the court denied defendant's motion to reconsider his sentence. He timely filed his notice of appeal on August 21, 2024.

¶ 22　　　　　　　　　　　　　　II. ANALYSIS

¶ 23　On appeal, defendant argues that because the original charges and subsequently filed charges were subject to compulsory joinder, trial counsel was ineffective for failing to file a written speedy trial demand and then a motion to dismiss the criminal sexual assault counts based on a speedy trial violation. In support, defendant relies on the principles that the speedy trial period begins for all charges subject to compulsory joinder once the speedy trial demand is filed, even if the State files additional charges at a later time (*People v. Quigley*, 183 Ill. 2d 1, 13 (1998)), and that any delays attributed to defendant on the original charges could not be attributed to the subsequently filed charges. *People v. Williams*, 204 Ill. 2d 191, 207 (2003). He further cites section 103-5(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(b) (West 2020)), which states that a defendant on pretrial release must be tried within 160 days of the filing of a written

7

demand for trial. See also *People v. Raymer*, 2015 IL App (5th) 130255, ¶ 11. Based on these principles, defendant argues that counsel acted unreasonably by not filing a written speedy trial demand, as it would have precluded the filing of any additional charges after 160 days while leaving trial counsel the ability to continue the proceedings for the offenses already charged. He further contends he was prejudiced where the two higher class felony charges with increased sentencing ranges would have been dismissed had counsel acted reasonably.

¶ 24    A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (Illinois Supreme Court adopting the *Strickland* standard). To prevail, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (quoting *Strickland*, 466 U.S. at 694). The failure to establish either deficient performance or prejudice precludes a finding of ineffective assistance of counsel. *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 25    Even assuming defendant can meet the performance prong of *Strickland*, he has not established prejudice. See *People v. Roland*, 2023 IL 128366, ¶ 30 (courts need not address the performance prong of *Strickland* if defendant fails to prove the prejudice prong). His argument that the criminal sexual assault charges would have been dismissed mistakenly limits the prejudice analysis to the State's actions under the current facts of the case. Speculation or a showing of

8

"some conceivable effect on the outcome of the proceeding" is insufficient to amount to *Strickland* prejudice. (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 126291, ¶ 55. Defendant must "affirmatively prove" a reasonable probability that the result of the proceedings would have been different. *Id.* ¶¶ 54-55. While we consider what occurred below in determining the prejudice of counsel's actions, we "also consider the likelihood of what would have occurred had counsel not erred." *People v. Allen*, 2024 IL App (5th) 220283-U, ¶ 43; see *People v. Yankaway*, 2025 IL 130207, ¶¶ 106-08 (finding an insufficient showing of prejudice where defendant failed to address what the State would have done had trial counsel objected to a continuance).

¶ 26    For example, in cases involving counsel's failure to test evidence, we consider not only whether a defendant had further evidence to test, but also whether the testing provided favorable results to the defendant. See *Johnson*, 2021 IL 126291, ¶ 58. A defendant's prejudice argument— in cases involving counsel's failure to object to a continuance—must be based on more than an assumption that the State would have acted the same had counsel objected. See *Yankaway*, 2025 IL 130207, ¶ 107. Thus, in cases involving a failure to file a speedy trial demand, defendant must "argue or explain how the State would have failed to try the case within the speedy trial period had counsel filed a timely speedy trial demand." *Allen*, 2024 IL App (5th) 220283-U, ¶ 43 (citing *People v. Teen*, 2023 IL App (5th) 190456, ¶ 52; *People v. Johnson*, 2023 IL App (4th) 220833-U, ¶ 19).

¶ 27    Defendant here "disregards the possible effects" a written speedy trial demand would have had on the remaining pretrial proceedings. *Yankaway*, 2025 IL 130207, ¶ 107. He in no way explains why there is a reasonable probability that the State would have ignored or overlooked the commencement of the speedy trial clock once the written demand was filed and filed the additional charges beyond 160 days thereof. There is also no indication in the record that the State would not

have been prepared or filed the charges within the statutory time frame had counsel filed a written speedy trial demand. Rather, defendant "rests on the assumption that the State would not have changed its pretrial strategy" upon the filing of a written speedy trial demand and filed the additional charge within 160 days thereafter. *Id.* Defendant therefore failed to meet his burden of affirmatively proving prejudice and his ineffective assistance claim fails. *Id.* ¶ 108.

¶ 28                                    III. CONCLUSION

¶ 29    Because defendant's prejudice argument rests on assumptions, he fails to establish ineffective assistance of counsel. Accordingly, we affirm his conviction and sentence.


¶ 30    Affirmed.